IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHANCE BAUCUM, Individually          §
and on Behalf of All Others          §
Similarly Situated,                  §
                                     §
                Plaintiff,           §
                                     §     CIVIL ACTION NO. H-16-3278
v.                                   §
                                     §
MARATHON OIL CORP.,                  §
                                     §
                Defendant.           §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Chance Baucum, Individually and On Behalf of All Others Similarly Situated, filed this action against defendant, Marathon Oil Corporation ("Marathon"), to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Pending before the court is Plaintiff's Motion for Conditional Certification and Court-Authorized Notice (Docket Entry No. 19). After considering Defendants's Response to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, (Docket Entry No. 22), Plaintiff's Reply in Support of Conditional Certification and Court-Authorized Notice (Docket Entry No. 61), and the applicable law, the court concludes that the pending motion should be granted and notice provided to all persons who worked for Marathon as HES Advisors and/or Solids Control Operators who were classified as independent contractors and paid a day-rate with no overtime compensation at any time from July 14, 2014 to the present.

## I. __Factual Allegations and Procedural Background__

### A. __Factual Allegations__[1]

Marathon is a global oil and gas exploration and production company operating worldwide and throughout the United States, including in Texas. Plaintiff alleges that to provide services to many of its customers, Marathon classifies as independent contractors certain workers who are employed on a day-rate basis. Plaintiff alleges that he worked for Marathon as a Health, Environment, and Safety ("HES") Advisor from approximately June 2013 to June 2016, and that throughout his employment Marathon classified him as an independent contractor and paid him a day-rate with no overtime compensation for hours worked in excess of 40 hours in a workweek. Plaintiff alleges that other workers like him regularly worked at well sites in excess of 40 hours each week, but that instead of paying them overtime as required by the FLSA, Marathon improperly classified them as independent contractors and paid them a daily rate with no overtime. Plaintiff alleges that he and all the putative class members shared the same or similar job requirements and pay provisions, were subjected to the same or similar policies and procedures, worked the same or similar hours, and were denied overtime as a result of the same illegal pay practice.

---

[1]Original Collective Action Complaint, Docket Entry No. 1, pp. 3-7.

## B.    Procedural Background

Plaintiff filed this action on November 6, 2016, alleging willful violation of the FLSA, and seeking an order holding Marathon liable for unpaid back wages due to Plaintiff and the potential putative FLSA class, and for liquidated damages equal in amount to their unpaid compensation.[2]  On April 21, 2017, plaintiff filed the pending motion for conditional certification and court-authorized notice seeking to certify a class and provide notice to: "All persons who worked for Marathon as H[ES] Advisors and/or Solids Control Operators who were classified as independent contractors and paid a day-rate with no overtime compensation at any time from _____, 2014 to the present."[3]  Plaintiff argues that "[b]ecause Marathon denied Baucum and the putative class members overtime under its uniform compensation policy, these workers are similarly situated."[4]

---

[2]Id. at pp. 7-10.

[3]Notice of Collective Action Lawsuit, Exhibit F to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, ("Notice of Collective Action"), Docket Entry No. 19-7, p. 1 & n. 2 ("This date represents three years back from the date that Notice and Consent Forms are first sent to the Putative Class Members."). See also Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, ("Plaintiff's Motion for Certification"), Docket Entry No. 19, pp. 1 and 3-4.

[4]Plaintiff's Motion for Certification, Docket Entry No. 19, p. 1.

On May 19, 2017, Marathon filed its response opposing plaintiff's motion for class certification.[5] Marathon agrees that conditional certification is appropriate with respect to HES Advisors, but argues that plaintiff's motion for conditional class certification should be denied as to Solids Control Operators because HES Advisors and Solids Control Operators have different job duties, use different equipment, have different supervisors, and different reporting structures and therefore are not similarly situated.[6] Attached as Exhibit I to Marathon's response are Marathon's proposed changes to the notice and consent documents.

On May 25, 2017, plaintiff filed a reply in support of his motion for conditional certification and court-authorized notice arguing that evidence submitted by both parties shows that HES Advisors and Solids Control Operators are sufficiently similar to justify notice because:

- Both positions were treated as independent contractors by Marathon

- Both positions were supplied to Marathon by Sub-Contractors

- Both positions were paid a day rate with no overtime.[7]

---

[5]Defendant's Response to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice ("Defendant's Response"), Docket Entry No. 22.

[6]Id. at pp. 1-2, 10-17.

[7]Plaintiff's Reply in Support of Conditional Certification and Court-Authorized Notice ("Plaintiff's Reply"), Docket Entry No. 23, p. 5.

-4-

## II. **Applicable Law and Standard of Review**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours, 29 U.S.C. § 207(a), and allows employees to sue their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-16. An employee may sue his employer under the FLSA on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Although § 216(b) neither provides for court-authorized notice nor requires certification for a representative action under the FLSA, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases. Hoffmann-La Roche Inc. v. Sperling, 110 S. Ct. 482, 486 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential plaintiffs, the court has discretion to approve the collective action and facilitate notice to potential plaintiffs.

-5-

Id. at 487 (ADEA action);[8] Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003) (FLSA action). The court also has discretion to modify the proposed class definition if it is overly broad. See Baldridge v. SBC Communications, Inc., 404 F.3d 930, 931-32 (5th Cir. 2005) (recognizing the court's power to "limit the scope" of a proposed FLSA action). See also Heeg v. Adams Harris, Inc., 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.'"). Because collective actions may reduce litigation costs for the individual plaintiffs and create judicial efficiency, courts favor collective actions when common issues of law and fact arise from the same alleged activity. Sperling, 110 S. Ct. at 486.

An FLSA cause of action "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "Based on the statute of limitations, courts have recognized that

---

[8]Sperling was an action brought under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to provide for an "opt-in" class action procedure for similarly-situated employees. 110 S. Ct. at 486 ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), in ADEA actions by facilitating notice to potential plaintiffs.").

class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." Tolentino v. C & J Spec Rent Services Inc., 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010). "Thus, the notice period must commence three years prior to the court's approval of notice." Id.

The term "similarly situated" is not defined in the FLSA. See, e.g., 29 U.S.C. § 216. The Fifth Circuit has declined to set a specific standard for courts to apply when considering whether employees are sufficiently similar to support maintenance of a collective action. See Mooney v. Aramco Services Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of two analyses is appropriate), overruled on other grounds by Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003).[9] Courts faced with this issue typically apply one of two standards, i.e., the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), or the "spurious class action" analysis described in Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990). See Mooney, 54 F.3d at 1214.

The Lusardi analysis proceeds in two stages: (1) a notice stage followed by (2) a decertification stage. See Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915-16 n.2 (5th Cir. 2008).

_____

[9]Mooney was an action brought under the ADEA, but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

At the notice stage the court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members. See Mooney, 54 F.3d at 1213-14. The decision is made using a "fairly lenient standard" because the court often has minimal evidence at this stage of the litigation. Id. at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Id. & n.8. Thus, notice stage analysis typically results in conditional certification of a representative class. Id. After conditional certification the "putative class members are given notice and the opportunity to 'opt-in,'" id., after which the action proceeds as a collective action. Id.

The second stage of the Lusardi approach — the "decertification stage" — is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. Id. "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Id. If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. Id. If the class is still similarly situated, the court allows the collective

action to proceed. <u>Id.</u> If the class is not still similarly situated, then the original plaintiff proceeds to trial on his individual claims. <u>Id.</u>

The <u>Shushan</u> analysis follows a procedure that is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"). While the Fifth Circuit has explicitly left open the question of whether the <u>Lusardi</u> approach, the <u>Shushan</u> approach, or some third approach should be used to determine whether employees are sufficiently similar to support maintenance of a collective action, <u>see</u> <u>Russell v. Brinker International, Inc.</u>, 441 Fed. Appx. 222, 226 (5th Cir. 2011), because <u>Shushan</u> applies the analysis used for class actions brought under Rule 23, and because the Fifth Circuit has described Rule 23's "opt out" procedure as fundamentally and irreconcilably different from § 216(b)'s "opt in" procedure, <u>see</u> <u>LaChapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam), most courts in this district follow the <u>Lusardi</u> approach. <u>See</u> <u>Sandoz</u>, 553 F.3d at 915 n.2. This court, therefore, will analyze plaintiff's motion using the <u>Lusardi</u> approach.

At this initial state of the <u>Lusardi</u> approach a plaintiff need only make a minimal showing to persuade the court to issue notice to potential class members. <u>Mooney</u>, 54 F.3d at 1214 (recognizing that courts apply a "fairly lenient standard" at the initial stage of the analysis). In the absence of Fifth Circuit guidance on the

appropriate test to use at this stage of the analysis, courts are split on the appropriate elements to consider. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Heeg, 907 F. Supp. 2d at 861; Tolentino, 716 F. Supp. 2d at 653. Other courts, however, have rejected the third element as non-statutory. See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., Civil Action No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting argument that FLSA collective action can be certified only if the plaintiff proves that others are interested in opting in to the lawsuit). Because the third element is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has even been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes, see Tony and Susan Alamo Foundation v. Secretary of Labor, 105 S. Ct. 1953, 1959 (1985), the court agrees that plaintiff need not present evidence of the third element at this stage of the litigation.

### III.  **Analysis**

**A.   Class Certification**

   1.   There is a Reasonable Basis for Crediting Plaintiff's
        Assertion that Other Aggrieved Individuals Exist

To satisfy the first element of the test that courts apply at
the initial notice stage of the <u>Lusardi</u> analysis plaintiff need
only show that there is a reasonable basis for believing that other
aggrieved individuals exist.    <u>Heeg</u>, 907 F. Supp. 2d at 862.
Plaintiff contends that "[e]ven though notice has yet to go out,
additional H[ES] Advisors and/or Solids Control Operators who were
paid a day-rate have opted-in as plaintiffs to this matter."[10]
Attached to plaintiff's motion are the declarations of one other
HES Advisor, Gerald Bounds,[11] and one Solids Control Operator, John
Smith,[12] both of whom state that despite regularly working more than
forty hours per week they did not receive overtime and were,
instead, paid a day rate.   Bounds and Smith also state that they
know other similarly situated former coworkers who would be
interested to learn about their rights and the opportunity to join

---

[10]Plaintiff's Motion for Certification, Docket Entry No. 19,
p. 2.

[11]Declaration of Gerald Bounds ("Bounds Declaration"), Exhibit
B to Plaintiff's Motion for Certification, Docket Entry No. 19-3.

[12]Declaration of John Smith ("Smith Declaration"), Exhibit C
to Plaintiff's Motion for Certification, Docket Entry No. 19-4.

this action.[13]  By presenting the declarations of Bounds and Smith,
representing, respectively, one HES Advisor and one Solids Control
Operator, both of whom state that despite regularly working more
than forty hours per week they did not receive overtime and were,
instead, both paid a day rate, plaintiff has satisfied the first
element of the Lusardi test by showing that there is a reasonable
basis for believing plaintiff's assertion that other aggrieved
individuals exist who worked for Marathon as both HES Advisors and
Solids Control Operators.

2.  There is a Reasonable Basis for Believing that a Class of
    Similarly Situated Persons Exists

To satisfy the second element of the test that courts apply at
the initial notice stage of the Lusardi analysis plaintiff must
demonstrate a reasonable basis for believing that a class of
similarly situated persons exists.  See Heeg, 907 F. Supp. 2d at
862 (citing Lima v. International Catastrophe Solutions, Inc., 493
F. Supp. 2d 793, 798 (E.D. La. 2007)).  "Potential class members
are considered similarly situated to the named plaintiff if they
are 'similarly situated in terms of job requirements and similarly
situated in terms of payment provisions.'"  Id. (quoting Ryan v.
Staff Care, Inc., 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007).  "'A

_____

[13]See Bounds Declaration, Exhibit B, to Plaintiff's Motion for
Certification, Docket Entry No. 19-3, p. 3 ¶ 18; and Smith
Declaration, Exhibit C to Plaintiff's Motion for Certification,
Docket Entry No. 19-4, p. 2 ¶ 17.

court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" Id. (quoting Aguirre v. SBC Communications, Inc., Civil Action No. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. April 11, 2006)).

(a) Potential Class Members are Similarly Situated in Terms of Job Requirements

Marathon does not dispute that plaintiff is similarly situated to other HES Advisors in terms of both job requirements and pay provisions. Marathon argues instead that Solids Control Operators are not similarly situated to HES Advisors,[14] and that plaintiff is not a proper representative for a class that includes Solids Control Operators because "the nature of the relationships, between Marathon and the consulting companies that provide HES Advisors are very different from the contracts and the relationships between Marathon and the oilfield services companies that provide Solids Control Operators,"[15] and "the services provided by the HES Advisors under these contracts are wholly different from those provided by the Solids Control Operators."[16]

---

[14]Defendant's Response, Docket Entry No. 22, pp. 3-4, 10-14.

[15]Id. at pp. 3-4.

[16]Id. at p. 4.

As evidence that Solids Control Operators are not similarly situated to plaintiff and other HES Advisors, Marathon submits the declarations of its EF Asset HES Manager, Jon R. Kizzee,[17] who described the work of HES Advisors, and Drilling Manager, Donald W. Day, who described the work of Solids Control Operators.[18] Kizzee states that plaintiff worked as an HES Advisor at Marathon well sites and was either an independent contractor or an employee of consulting firm RWDY, Inc. ("RWDY").[19] Kizzee states:

> 4. The contracts that Marathon enters into with consulting companies for HES Advisors are effectively contracts for "labor." This means that Marathon desires the expertise of the HES Advisors. Marathon desires this expertise because the HES Advisors perform critical safety-related functions such as: conducting safety meetings for the workers at the wellsite; monitoring all activity at the wellsite to ensure that all work is being performed in a safe manner; promptly correcting any workers who are not performing work in a safe manner; and documenting and reporting all safety-related incidents that occur at the wellsite.

> 5. Given the importance of the HES Advisor position, Marathon takes a more active role in vetting the individuals who the consulting companies provide to perform such services at a Marathon wellsite. Marathon must ensure that these individuals are qualified to perform the work for the sake of the safety of all workers on site. For this same reason, Marathon requires the HES Advisors to promptly report all safety-related incidents directly to Marathon and to also provide

---

[17]Declaration of Jon R. Kizzee ("Kizzee Declaration"), Exhibit A to Defendant's Response, Docket Entry No. 22-1.

[18]Declaration of Donald W. Day ("Day Declaration"), Exhibit B to Defendant's Response, Docket Entry No. 22-3.

[19]Kizzee Declaration, Exhibit A to Defendant's Response, Docket Entry No. 22-1, p. 1 ¶ 3.

regular safety-related reports to Marathon. To ensure that there are no issues with the reporting process, Marathon provides the HES Advisors with a Marathon computer and audit checklists.

6. Marathon assigns the HES Advisors to its wellsites and tells them on what date and at what time to arrive at the wellsite. Once the HES Advisors arrive at the wellsite, they perform their job duties free from any direct supervision from Marathon.[20]

Kizzee states that Marathon did not pay or determine how RWDY paid the plaintiff but, instead, paid RWDY a contractually-agreed-upon rate for each day that the plaintiff worked at a Marathon site.[21]

Day states:

5. Solids Control Operators are primarily responsible for working with Mud Engineers to ensure that the drilling fluids that are being used during the drilling process remain within pre-determined specifications. At the beginning of the job, the Solids Control Operators generally rig up a stand on which a centrifuge sits. They then program the centrifuge to rotate at a certain speed designed to keep the drilling fluids within specifications. The Solids Control Operators then attach a hose to the centrifuge that is connected to a pump that is placed in a tank where the drilling fluids are stored.

6. When activated, the pump conveys the drilling fluids from the storage tank up to the centrifuge. The centrifuge then separates out certain solids from the fluids to maintain the fluids within specifications, prior to the fluids being pumped back down the well bore to facilitate the drilling process. At the end of the job, the Solids Control Operators rig down the equipment and prepare it to be moved to the next job.

7. Marathon does not oversee, supervise, or direct the work performed by the Solids Control Operators, it does not provide any tools or equipment to the Solids Control

---

[20]Id. at p. 2 ¶¶ 4-6.

[21]Id. at p. 3 ¶ 8.

-15-

Operators, it does not set or control the hours worked by the Solids Control Operators, and it does not control the assignment of the Solids Control Operators to a particular job. All of this is done by the services companies with whom Marathon contracts for fluid services.[22]

Asserting that "the primary issue on the merits in this case is whether Marathon employed Baucum and the alleged putative class members,"[23] Marathon argues that

> in order to prevail on his Motion, Baucum must be required to show that the HES Advisors and the Solids Control Operators are similarly situated with respect to their alleged employment relationship with Marathon. He must also be required to show that the Solids Control Operators are similarly situated in this same respect. Because Baucum cannot satisfy either burden, the Court should exclude the Solids Control Operators from the proposed class.[24]

Citing Andel v. Patterson-UTI Drilling Co., LLC, 280 F.R.D. 287, 295 (S.D. Tex. 2012), for its recognition that courts in the Fifth Circuit often focus on the economic realities of the relationship between a worker and a company to determine whether a company is a worker's employer, Marathon argues that the court should exclude Solids Control Operators from the proposed class because application of the economic realities test will vary depending upon whether the workers to whom it is applied are HES Advisors or Solids Control Operators, meaning that the two

---

[22]Day Declaration, Exhibit C to Defendant's Response, Docket Entry No. 22-3, p. 2 ¶¶ 5-7.

[23]Defendant's Response, Docket Entry No. 22, pp. 9-10.

[24]Id. at p. 10.

positions are not similarly situated. Citing <u>Christianson v.</u>
<u>Newpark Drilling Fluids, LLC</u>, No. H-14-3235, 2015 WL 1268259 (S.D.
Tex. March 19, 2015), Marathon argues that at least one court has
denied an application for conditional certification on this basis.[25]

In <u>Christianson</u>, 2015 WL 1268259, at *1, the plaintiff alleged
that Newpark, an oilfield services company, misclassified him and
a putative class of "Fluid Service Technicians" as independent
contractors and paid them a day rate with no overtime compensation
in violation of the FLSA. At the conditional certification stage,
the court found as a preliminary matter that "a fundamental
requirement of an FLSA claim is that the plaintiff be an employee
of the defendant during the relevant period." <u>Id.</u> After
identifying the economic realities test as a test that courts in
this circuit often apply to determine if a worker is an employee,
the court considered the parties' evidence in light of the
following five factors typically considered to comprise the
economic realities test: (1) the degree of control exercised by the
alleged employer; (2) the extent of the relative investments of the
worker and the alleged employer; (3) the degree to which the
worker's opportunity for profit or loss is determined by the
alleged employer; (4) the skill and initiative required in
performing the job; and (5) the permanency of the relationship.
<u>Id.</u> at *3. The court denied the motion for conditional

---

[25]<u>Id.</u> at pp. 12-15.

certification after concluding that the need for individualized analysis of putative class members' employment relationships with Newpark would "eviscerate all notions of judicial economy that would otherwise be served by conditional class certification." Id. at *4. The court explained that

> [t]he parties' briefing and evidence demonstrate that the putative class members' circumstances are significantly dissimilar with respect to the economic realities factors that will later need to be analyzed for FLSA coverage purposes to determine whether a worker was improperly classified by Newpark as an independent contractor.

Id. The court made clear that it was not applying the economic realities test prematurely but was merely ensuring that the putative class members were "similarly situated for purposes of applying [that test] at the appropriate phase of th[e] case in the future." Id. Marathon argues that this case warrants the same result as to Solids Control Operators because the plaintiff has not established that HES Advisors are similarly situated to Solids Control Operators in any material respect.[26]

Citing Tamez v. BHP Billiton Petroleum (Americas), Inc., No. 5:15-cv-330-RP, 2015 WL 7075971, at *4 (W.D. Tex. October 5, 2015), plaintiff argues that Solids Control Operators are similarly situated to the HES Advisors because the fact that they held different job positions and had different employment relationships with Marathon are distinctions that do not matter in a case like

---

[26]Id. at p. 12.

this one that turns on a challenged pay practice.[27]  In Tamez the
court certified a class consisting of all oil field independent
contractors working for BHP who were paid a day-rate; the class
conditionally certified was not limited to a particular job
position or employment status.  Id.  Although recognizing that
"[c]ourts are split as to whether the economic realities test
should be utilized when determining whether to conditionally
certify a class in an FLSA action concerning an allegedly wrongful
independent contractor designation," id. at *5, the court
nonetheless concluded that "[e]ven stipulating that 'Plaintiffs
must prove they are similarly situated through the lens of the
economic realities test,' . . . conditional certification is
justified." Id.  The court explained that

> Plaintiffs have presented some evidence that members of
> the putative class are similarly situated with regard to
> the economic realities test.  Specifically, they have
> provided declarations from four Named Plaintiffs and nine
> Opt-In Plaintiffs.  The declarations consistently state
> that Defendant (1) interviewed Plaintiffs for their
> position, (2) scheduled the days and hours Plaintiffs
> were required to work, (3) provided the equipment
> necessary to perform their duties, (4) instructed them on
> how to perform their duties, and (5) supervised their
> performance.

Id. at *6.  The court observed that the plaintiffs' evidence
suggested that

> Defendant exercised similar degrees of control over class
> members, that Defendant was principally responsible for
> capital investments, and that, generally, class members

[27]Plaintiff's Reply, Docket Entry No. 23, p. 1.

-19-

> were subject to similar employment policies and
> practices. Albeit minimal, this evidence suggests that
> the question of whether class members were independent
> contractors or employees will be amenable to a collective
> determination at a later stage in the litigation.

Id. Acknowledging that defendants questioned the credibility of
the plaintiffs' evidence, the court stated "this is not the proper
stage of the litigation to assess the credibility of evidence."
Id.

Here, plaintiff has submitted his own declaration together
with the declarations of fellow HES Advisor, Bounds, and Solids
Control Operator, Smith. Like the declarations before the Tamez
court, the declarations submitted by Baucum, Bounds, and Smith
uniformly state that Marathon scheduled them to work 12-14 hour
shifts and to be on call 24 hours a day, provided the equipment
necessary for them to perform their jobs, instructed them on how to
perform their jobs, supervised their performance, required them to
live in Marathon-owned trailers on or near their jobsites, and did
not require them to make significant financial investments in their
jobs. Baucum and Bounds both stated that Marathon interviewed them
for their positions. Although Smith did not state that Marathon
interviewed him for his position, plaintiff argues that this
difference is irrelevant because Marathon was involved in hiring
Solids Control Operators through its contracts with subcontractors
who plaintiff contends were joint employers together with Marathon.
See 29 C.F.R. § 791.2(a) ("[I]f the facts establish that the

-20-

employee is employed jointly by two or more employers, i.e. that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment from purposes of the Act."). See also Falk v. Brennan, 94 S. Ct. 427, (1973) (holding that apartment building maintenance workers were employed by both building management company and building owners for FLSA purposes).

As in Tamez, 2015 WL 7075971, at *6, the plaintiff in this action has presented evidence showing that the defendant exercised similar degrees of control over potential class members, that defendant was principally responsible for capital investments, and that potential class members were subject to similar employment policies and practices. This evidence suggests that the question of whether potential class members were independent contractors or employees will be amenable to collective determination at a later stage in the litigation. Accordingly, the court concludes that plaintiff has carried his burden of showing that HES Advisors and Solids Control Operators are similarly situated in terms of job requirements.

> (b) Potential Class Members are Similarly Situated in
> Terms of Payment Provisions

Marathon does not dispute that plaintiff and other HES Advisors were all paid a day rate, that they regularly worked more

than forty hours a week, and that they were not paid overtime. The Baucum, Bounds, and Smith declarations attached to plaintiff's motion for conditional certification show that at least one other HES Advisor, Bounds, and at least one Solids Control Operator, Smith, were subject to the same pay policy as the plaintiff. This evidence is sufficient to meet the low threshold required for showing that potential class members are similarly situated in terms of payment provisions at this initial stage of the case.

### 3. Conclusion as to Class Certification

Because the evidence before the court shows that there is a reasonable basis for crediting plaintiff's assertion that other aggrieved individuals exist, and that the other aggrieved individuals are similarly situated to plaintiff in terms of both job requirements and payment provisions, the court concludes that plaintiff has provided sufficient evidence to satisfy the first stage of the Lusardi analysis, and that this matter should be conditionally certified as a collective action under 29 U.S.C. § 216(b) with respect to the following class: All persons who worked for Marathon as HES Advisors and/or Solids Control Operators who were classified as independent contractors and paid a day-rate with no overtime compensation at any time from July 14, 2014, to the present.

## B.  **Notice to Potential Class Members**

Marathon asserts that

[a]ttached at Exhibit I are Marathon's proposed changes
to the notice and consent documents that Baucum attached
at Exhibit F to his Motion.  All of Marathon's proposed
changes are in red-line form.  Marathon respectfully
requests that the Court permit the parties 10 business
days after it rules on the Motion to negotiate and
finalize the terms of the notice and consent documents
and to agree upon the manner and the methods by which the
notice and consent documents shall be distributed.
Marathon further requests that if the parties cannot
agree to the forms of the notice and consent documents
and/or the methods and procedures for distributing such
documents, that the parties be required to promptly
submit their dispute to the Court.[28]

Plaintiff replies that

[m]ost of the changes Marathon desires to the Proposed
Notice attached to Plaintiff's Motion simply delete any
reference to Solids Control Operators from the Notice.
For all the reasons discussed above, Plaintiff opposes
such alterations because Solids Control Operators are
properly included in the putative class.  Plaintiff has
no issues with the remainder of Marathon's edits, which
are merely stylistic.[29]

Because for the reasons stated in the preceding section the
court has already concluded that a conditional class should be
certified in this action, and that class should include Solids
Control Operators, the proposed notice should not be edited to
exclude reference to Solids Control Operators.  Since plaintiff
does not object to the other edits suggested by Marathon, the court
concludes that those changes should be made.

---

[28]Defendant's Response, Docket Entry No. 22, pp. 17-18.

[29]Plaintiff's Reply, Docket Entry No. 23, pp. 9-10.

## IV.  Conclusions and Order

For the reasons explained in § III, above, Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, Docket Entry No. 19, is **GRANTED**, and the court provisionally deems this action a collective action and defines the conditionally approved collective class as follows:

> All persons who worked for Marathon as HES Advisors and/or Solids Control Operators who were classified as independent contractors and paid a day-rate with no overtime compensation at any time from July 14, 2014, to the present.

Within ten business days of the entry of this Memorandum Opinion and Order defendant shall provide plaintiff with a list of all employees fitting the description of the conditionally certified class in a usable electronic format.  This list shall include each individual's full name, last known mailing address, e-mail address (if known), telephone number, and date(s) of employment.  Plaintiff shall have twenty days from the receipt of this information to mail and email the proposed notice to the potential class members.  The opt-in period shall be sixty days from the date the notice is mailed.

**SIGNED** at Houston, Texas, on this 14th day of July, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-24-